286 P.2d 510]

[Crim. No. 1033.   Fourth Dist.   Aug. 11, 1955.]

THE PEOPLE, Respondent, v. VANCE BAKER, Appellant.

Vance Baker, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was charged with the crime of possession of a firearm capable of being concealed upon the person by one previously convicted of a felony. (Pen. Code, § 12021) and it was further alleged in the information that the defendant had previously suffered six felony convictions for which he had served terms of imprisonment in state prisons. Defendant admitted the six prior convictions and after trial by jury, a verdict was returned finding him guilty of the offense charged. His motion for a new trial was denied and he was sentenced to imprisonment in the state prison for the term prescribed by law. He appeals from the judgment and from the order denying his motion for a new trial and contends that the gun received in evidence was obtained

illegally and therefore was inadmissible; that false testimony was received in evidence; that certain hearsay evidence was introduced; that the trial court erred; and that his attorney did not protect his rights.

On January 3, 1955, at approximately 8:15 p. m., State Highway Patrol Officer Shannon and Chief Petty Officer Cattlidge were traveling west on State Route 78 at the intersection into Vista (San Diego County) when they observed a Ford automobile which pulled out from one side of the street and proceeded in front of the officers. Shannon testified that "It was very erratic. He ran two cars off the road. He was weaving across the center line of the road. So I started in pursuit of him, turned my red light on and he turned the 'corner approximately a half mile that we had followed him trying to get him stopped in two blocks, but he turned left and went into the alley behind the liquor store. We pulled in behind him and I got out of the car and opened his car door and took him out of the car. It was the defendant"; that the defendant smelled strongly of liquor and was more or less belligerent; that "I had seen him drive the automobile and in my opinion he was under the influence of intoxicating liquor, so I arrested him for 502"; that he called a tow car and defendant's automobile was taken to a garage in Vista; that they took the defendant to the Oceanside jail and he, Shannon, returned to the garage in about 45 minutes and found a loaded .38 caliber revolver under the front seat of defendant's car on the driver's side. This gun was taken to the office in San Diego and was thereafter identified in court as People's Exhibit 1.

H. D. Thurtle testified that on Janary 3, 1955, at about 7 or 8 p. m., the defendant came to his house; that he showed signs of having been drinking and talked rather loudly; that he used abusive language and then went out; that he drove his car into a ditch and when he backed out he threatened to shoot Thurtle's son and said he was also going to shoot his (defendant's) wife and daughter.

Frank Lovell testified that he bought the revolver (People's Exhibit 1) at a store in Ocean Beach; that on the evening of January 1, 1955, at about 11 p. m. he and the defendant went to Lovell's house and got the gun; that they then went to the residence of a Mrs. Burkhalter in Vista and Lovell there took the shells out of the gun and put it in a desk drawer; that after the defendant had been released on bail he asked Lovell to tell the authorities that he (Lovell) left the gun in the car

"because it would help the situation"; that after the gun was discovered defendant asked him to say that he (Lovell) had accidentally left the gun in the car; that on the day defendant was released on bail he stated to Lovell that the reason he happened to have the gun in his possession was that Danny Burrell gave it to him to take back to Mrs. Burkhalter's house.

Mary Burkhalter testified that she saw the gun in the possession of Danny Burrell on the morning of January 2, 1955; that he took it out of a desk drawer in her house and put it in his waistband and that the defendant was standing by the door.

Mary Durbin (Burrell's sister) testified that in the afternoon of January 3d her brother borrowed the defendant's automobile to go from her home to the grocery store; that the defendant was at the house at the time; that before leaving, her brother gave her the revolver involved and she put it in a closet; that she and her brother then went to the store and when they returned the gun and the defendant were gone and she did not see the gun again.

On January 4, when questioned by the officers concerning his possession of the revolver, defendant stated he knew nothing of it and further stated that he was the only one who had driven his car on January 3d. He testified in his own behalf at the trial and stated that he saw the revolver on Januard 2d on a table at Mrs. Burkhalter's place but did not see it thereafter; that he did not know that the gun was in his car at the time he was arrested and that he did not recall threatening to kill anyone while he was at the Thurtle house.

Appellant first contends that the gun was obtained illegally and therefore inadmissible in evidence. This argument is without merit. No contention was made at the trial that there was no reasonable or probable cause for the search of defendant's car by the officers or that the possession of the gun was obtained by them unlawfully. ██ In this connection the record shows that defendant was arrested for the public offense committed in the presence of the officers. Such an arrest without a warrant is authorized by section 836 of the Penal Code. ██ Under the circumstances the officers legally took possession of defendant's car for safekeeping. The evidence shows that just as the officers were leaving the Oceanside jail where they had left the defendant after "booking" him, they received a call on the air from their office asking whether they had found a gun on the defendant. On receiving a negative

answer, Shannon was instructed by his office to check the car. He testified that the night watchman let him into the garage where the car was stored and after checking the glove compartment, he noticed the gun under the front seat on the driver's side. Since the defendant's automobile was legally in the possession of the officers, the gun involved was also legally in their possession and under the circumstances it was legally obtained. The case of *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], which is cited by appellant in support of his contention, has no application under the circumstances existing in the present case.

Appellant argues that false evidence was used in the trial to obtain the conviction. Apparently this contention is based on inconsistencies in the testimony of the witness Lovell in his statements to the officers. However, it was not shown that such evidence was knowingly used by the prosecution to obtain the conviction and it was for the jury to determine the credibility of the witness and the weight to be given to his testimony. As was said in *People* v. *Cannon*, 77 Cal.App.2d 678, 688 [176 P.2d 409]:

"Although impeaching evidence in the nature of contradictions or otherwise has been received, it is still the right as well as the duty of the jury to determine to what extent they believe or disbelieve the testimony. (*Estate of Gird*, 157 Cal. 534 [108 P. 499, 137 Am.St.Rep. 131]; *Secondo* v. *Secondo*, 218 Cal. 453 [23 P.2d 752].) They may likewise give credence to a witness who has falsely testified in part (*Robinson* v. *Robinson*, 159 Cal. 203 [113 P. 155], or whose testimony contains contradictions or inconsistencies. (*Bitsekas* v. *Parechanian*, 67 Cal.App. 148 [266 P. 974].)"

The evidence, other than that which appellant claims to be false, is amply sufficient to sustain a conviction, and as is said in *People* v. *Thomas*, 103 Cal.App.2d 669, 672 [229 P.2d 836]: "A judgment cannot be set aside on appeal unless it clearly appears that on no hypothesis whatever is there sufficient substantial evidence to sustain it."

In the instant case defendant was in possession of and driving his automobile containing the gun involved at the time of his arrest and was exercising control of both the gun and the car. He stated to one of the witnesses that he was taking the gun back to the Burkhalter residence when he was arrested. These circumstances, together with defendant's threats made to the witness Thurtle and his equivocal statements after arrest are sufficient to support the judgment.

(*People* v. *Noland,* 61 Cal.App.2d 364, 366 [143 P.2d 86] ; *People* v. *Wissenfeld,* 36 Cal.2d 758, 764 [227 P.2d 833].)

Appellant contends that the trial court erred. Apparently this contention is directed to the admission of evidence of certain statements of witnesses which defendant claims were inconsistent and hearsay. However, it was the jury's function to determine the weight to be given to the testimony and we are unable to find any reversible error in this connection. Likewise, appellant's claim that his attorney did not protect his rights is not supported by the record.

The judgment and the order denying the motion for new trial are affirmed.

Barnard, P. J., and Shell, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.