275 Cal.App.2d 1007 (1969)
THE PEOPLE, Plaintiff and Appellant,
v.
JOSEPH PAUL MARCHESE, Defendant and Respondent.
Crim. No. 16369. 
California Court of Appeals. Second Dist., Div. One. 
Sept. 2, 1969.
 Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Maurice H. Oppenheim, Deputy District Attorneys, for Plaintiff and Appellant.
 Patten, Faith & Sandford and Jules Sandford for Defendant and Respondent.
 LILLIE, J.
 The People appeal from order dismissing an information on defendant's motion under section 995, Penal Code. Defendant was charged with one count of possession of marijuana and two counts of possession for sale of dangerous drugs.
 [1] Around 4:40 a.m. on September 8, 1968, defendant, driving a 1967 Mercury Cougar, ran into a building; Officer *1008 Gibson arrived on the scene at about the same time. He saw the car on the wrong side of the street resting against the building; defendant, the sole occupant, was seated behind the wheel; the Cougar had major front end damage. The officer asked him if he was hurt; defendant said he was not but that he was drunk; the officer told him to get out of the vehicle but he was unable to do so unassisted. Defendant seemed to be unsteady and in a dazed condition, his eyes appeared to be watery and glassy and a strong odor of alcohol emanated from his breath; the officer concluded that he was intoxicated. Defendant was arrested for drunk driving ( 23102, subd. (a), Veh. Code) and advised of "applied [sic] consent," and his constitutional rights; defendant chose a blood analysis and Officer Gibson took him to St. Luke's Hospital for a blood test and then booked him.
 Officer Scannell, who arrived at about the same time as Officer Gibson, saw defendant seated behind the steering wheel and observed that he seemed dazed; defendant had a slurred accent and his balance was such that Sergeant Teal had to assist him in getting out of the vehicle; the officer was present when defendant was arrested and knew that Officer Gibson was taking him to the hospital for a blood alcohol test. After defendant was removed Officer Scannell remained at the scene to make out the accident report and impound the vehicle; as a check list he used the Highway Patrol Check Sheet Form 180 to record anything of value found in the vehicle; he proceeded to inventory the contents of the interior of the car; when he came to the spare tire he was to check, he discovered the trunk was locked and the key to it was not in the car; he passed over this item and continued with the inventory; before he completed it the tow truck arrived and while the driver, Mr. Clark, was sweeping the debris off the street, Clark found in the debris the key to the trunk. Officer Scannell then opened the trunk and saw a closed duffel bag which he unzipped and in which he found several plastic bags containing miscellaneous cigarettes and leafy material, measuring spoon with a burned bottom, corn cob pipe and pill containers containing capsules and pills; in the trunk he also found a colander, sifter with marijuana residue, plastic container and Zig Zag papers. It was established that the duffel bag contained marijuana and dangerous drugs--8 hand-rolled marijuana cigarettes, 6 grams marijuana, 1 gram hashish, 400 amphetamine tablets and 135 sodium secobarbital capsules.
 Viewing the totality of circumstances (People v. Williams, 67 Cal.2d 226, 231 [60 Cal.Rptr. 472, 430 P.2d 30]; People v. *1009 Webb, 66 Cal.2d 107, 126 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; People v. Norris, 262 Cal.App.2d Supp. 897, 898 [68 Cal.Rptr. 582]), we conclude that the evidence recovered from the trunk of the vehicle was lawfully obtained. Defendant was the sole occupant of the vehicle and when he was arrested, taken to the hospital for a blood alcohol test and booked, [fn. 1] there remained no one to take charge of the vehicle and remove it. The Cougar had collided with a building, was on the wrong side of the street resting against the side of the building and had extensive front end damage. Thus, damaged, unattended and resting partly on private property, the vehicle had to be removed, and a tow truck was called. The Cougar was properly impounded. ( 22651, subd. (h), Veh. Code; People v. Roth, 261 Cal.App.2d 430, 435-436 [68 Cal.Rptr. 49]; People v. Garcia, 214 Cal.App.2d 681, 684 [29 Cal.Rptr. 609]; People v. Nebbitt, 183 Cal.App.2d 452, 459 [7 Cal.Rptr. 8].)
 Around five minutes after the accident occurred, immediately upon defendant's removal from the scene and before the tow truck arrived, preparatory to impounding the vehicle, Officer Scannell proceeded to take inventory of its contents. "While Upton [People v. Upton, 257 Cal.App.2d 677 [65 Cal.Rptr. 103]] states that the Constitution does not permit 'an otherwise unreasonable search of a car simply because the police have a statutory authority to impound it under Vehicle Code, sections 22650 and 22651' this means no more than that those sections cannot be used as a subterfuge to cover up otherwise illegal activity, i.e. where the officers are actually engaged in the process of ferreting out evidence to be used in a criminal prosecution they cannot justify such activity under the guise that they were making 'an inventory' for purpose of impounding. A different result obtains where the officers were in fact acting in good faith and making such an inventory. (Cf. State v. Severance (1968) 108 N.H. 404 [237 A.2d 683, 686].)" (People v. Norris, 262 Cal.App.2d Supp. 897, 899 [68 Cal.Rptr. 582].) Thus where an officer is engaged in the making of a good faith inventory preparatory to or in the *1010 immediate process of impounding a car the activity is constitutional. (People v. Norris, 262 Cal.App.2d Supp. 897, 899 [68 Cal.Rptr. 582]; People v. Upton, 257 Cal.App.2d 677, 682 [65 Cal.Rptr. 103]; People v. Gil, 248 Cal.App.2d 189, 192 [56 Cal.Rptr. 88]; People v. Nebbitt, 183 Cal.App.2d 452, 460-461 [7 Cal.Rptr. 8]; People v. Ortiz, 147 Cal.App.2d 248, 251 [305 P.2d 145].)
 A review of the entire record convinces us of the officer's good faith in making an inventory clearly preparatory to impounding the vehicle. First, Officer Scannell throughout his testimony consistently claimed that the inventory was made in connection with impounding the Cougar; there is no evidence to the contrary. Second, it is readily apparent that the officer was not engaged in the process of "ferreting out evidence" to be used in a criminal prosecution; nothing indicates he was seeking contraband or anything else. His sole intention was to inventory the contents of the vehicle for his own protection as well as for the protection of the owner and the garageman, and take for safekeeping anything of value. This was entirely proper. (People v. Jones, 263 Cal.App.2d 818, 823 [70 Cal.Rptr. 13]; People v. Roth, 261 Cal.App.2d 430, 435 [68 Cal.Rptr. 49]; People v. Harris, 256 Cal.App.2d 455, 461 [63 Cal.Rptr. 849]; People v. Garcia, 241 Cal.App.2d 681, 684 [29 Cal.Rptr. 609]; People v. Ortiz, 147 Cal.App.2d 248, 251 [305 P.2d 145].) Third, the inventory was a part of the "customary and well justified procedure" (People v. Ortiz, 147 Cal.App.2d 248, 250 [305 P.2d 145]; People v. Gil, 248 Cal.App.2d 189, 192 [56 Cal.Rptr. 88]) preliminary to the lawful impounding of the vehicle; there is no question of its constitutionality in terms of it having been properly occasioned. (People v. Gil, 248 Cal.App.2d 189, 192 [56 Cal.Rptr. 88]; People v. Nebbitt, 183 Cal.App.2d 452, 461 [7 Cal.Rptr. 8].) Fourth, Officer Scannell used the regular Highway Patrol Check Sheet Form 180 as a check list to record those articles of value found in the vehicle. Fifth, the officer's conduct in checking the items on the check sheet form was normal, reasonable and routine--immediately after defendant departed he began to inventory the contents of the interior of the car, registration, cushions, glove compartment, etc.; when he came to the spare tire listed on the form he passed over the item unable to check it because he could not open the trunk; he made no effort to force it open; while continuing down the list the tow truck arrived and the key was recovered; to finish the inventory, he opened the trunk wherein he found the zippered duffel bag and its contents. At this point the officer discontinued the inventory. *1011
 Of course, the conduct of Officer Scannell in looking in the trunk and bag cannot be constitutionally justified by the fact that it uncovered the contraband (People v. Brown, 45 Cal.2d 640, 643 [290 P.2d 528]); neither is it necessarily constitutionally vulnerable because it turned up evidence of a crime different than the one for which defendant was arrested. (People v. Gil, 248 Cal.App.2d 189, 192 [56 Cal.Rptr. 88].) [2] However, the lower court found that there was no justification for opening a locked trunk. We think the court was in error. First, the Highway Patrol Check Sheet Form 180, the ordinary check list used in a routine inventory, contemplates that the inventory will take the officer making it to the trunk of the vehicle, for the items listed include the spare tire which is normally kept in the trunk. Officer Scannell opened the trunk not to search for evidence but to check the spare tire and list all items therein which may be of value. Second, a closed duffel bag in a locked trunk normally would indicate to a reasonable person that something of value is contained therein, and it seems to us that it was the officer's responsibility for his own protection, as well as that of the owner and the garageman to determine if the contents were of value, specifically list them and take them for safekeeping. The trunk key having been found and available could be used to remove valuables from the trunk if any were left there during the time the vehicle was being held. Little protection to the officer, the owner and the garageman would be afforded if all the officer could list would be "one duffel bag." Finally, having opened the duffel bag and found the plastic bags, it must have been fairly obvious to the police officer that contraband was contained therein; he was not required during the lawful inventory to close his eyes to evidence of another crime.
 For the foregoing reasons the order is reversed.
 Wood, P. J., and Thompson, J., concurred.
NOTES
[fn. 1] 1. Section 22651, subdivision (h), Vehicle Code, provides that an officer may remove a vehicle "When an officer arrests any person driving or in control of a vehicle for an alleged offense and the officer is by this code or other law required or permitted to take and does take the person arrested before a magistrate without unnecessary delay." Section 40302, subdivision (d), Vehicle Code, provides that whenever any person is arrested for any violation of the Vehicle Code not declared to be a felony he shall be taken without unnecessary delay before a magistrate "When the person arrested is charged with violating Section 23102 ...."