[Civ. No. 35526. Second Dist., Div. Four. May 13, 1970.]

JESSE E. MARTINEZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Morgan, Wenzel, Lynberg, Stearns & McNicholas and Donald S. White for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood, Maurice H. Oppenheim and Harry B. Sondheim, Deputy District Attorneys, for Real Party in Interest.

OPINION

ALARCON, J.*—The petitioner, Jesse E. Martinez, seeks a writ of mandate to require the respondent superior court to vacate its order

*Assigned by the Chairman of the Judicial Council.

denying his motion to suppress photographs of evidence observed in the trunk of an automobile he was driving prior to his arrest.

## FACTUAL BACKGROUND

An information was filed against the petitioner and Ruben Montez charging each of them with one count of burglary and one count of receiving stolen property.

Upon a motion pursuant to Penal Code section 995 the information was dismissed as to Ruben Montez.

Upon stipulation, the motion to suppress was based on the testimony contained in the transcript of the preliminary hearing and additional evidence presented by the People and by the petitioner. At the time the motion to suppress was denied the trial court made oral findings of fact in support of its conclusion that there was no unreasonable search or seizure under the facts presented to it.

There was no conflict in the evidence as to the facts leading up to the arrest of the petitioner. On June 29, 1969, at approximately 5 a.m., Officer Macquarrie, a Los Angeles County deputy sheriff, on patrol duty with a fellow officer, observed a 1962 Chevrolet drive over the curb and strike a telephone pole at the northwest corner of the intersection of State and 4th Streets. The vehicle then backed into the street and drove on. The officers followed the vehicle which drove into an alley north of the intersection. The vehicle was stopped in the center of the alley, blocking traffic in either direction. Both occupants alighted from the vehicle. Officer Macquarrie formed the opinion that the driver, the petitioner Jesse E. Martinez, was under the influence of intoxicating liquor because of the odor of alcohol on his breath, his slow and slurred speech, his bloodshot eyes, and his inability to stand without support from leaning on the vehicle. The passenger (Ruben Montez) appeared to be drunk and was holding an open can of beer. The petitioner was arrested for "driving under the influence of alcohol" and Ruben Montez was arrested for "plain drunk."

The evidence is in conflict as to what occurred following the arrest of the petitioner.

### The People's Evidence

Officer Macquarrie testified that he asked the petitioner to produce his driver's license. The petitioner did not have a valid California driver's license in his possession. The officer was unable to determine the ownership of the automobile because it did not contain a vehicle registration certificate.

During the time Officer Macquarrie was at the scene of the arrest someone approached the officers and stated he was "related to the defendant." Officer Macquarrie could not recall if this person came to the scene of the arrest before or after the trunk of the car was opened. After the arrest of the petitioner, Officer Macquarrie determined that, since the vehicle was blocking the alley, it should be impounded because "under 22651(h) of the Vehicle Code in that the defendant was being arrested, there was no competent party to release the vehicle to." He did not release the vehicle to the person who had appeared after the arrest of the petitioner for the reason that "He didn't have any identification to show who he was particularly, and at that point I had not established the ownership definitely of the vehicle to give me grounds to release it to him." Officer Macquarrie made an inventory of the contents of the vehicle. He opened the trunk and discovered an adding machine and a typewriter with "L. A. City Schools" stenciled on the side. Because the arrest occurred within the City of Los Angeles, Officer Macquarrie requested that a Los Angeles Police Department unit come to the scene to take custody of the petitioner and the vehicle. Officer Vernon Childs of the Los Angeles Police Department testified that he arrived at the scene in response to Officer Macquarrie's request for assistance. Officer Childs inventoried the contents of the vehicle on a standard L.A.P.D. impound sheet and summoned a tow truck to impound the automobile.

*The Defense Evidence*

The petitioner testified that when he stopped the vehicle in the alley, he was about 25 to 30 feet from the residence of Ruben Montez. Mr. Montez' father came out of the Montez residence. The petitioner testified that he gave this man the keys to his car so that he could "park it some place." When a police officer asked the petitioner for the keys to the car, the petitioner told him that he had given the keys to Montez' father. On cross-examination the petitioner stated he did not have a driver's license in his possession nor was there a registration certificate in the automobile at the time he was arrested.

Ruben Montez was called as a witness by the petitioner. Mr. Montez was a passenger in the petitioner's vehicle immediately prior to the arrest. Mr. Montez testified that his father came out of the house. Mr. Montez also testified that the petitioner tried to give the automobile keys to witness' father but was unable to do so. The petitioner told Mr. Montez' father to park the car or "Take care of it." Mr. Montez' father asked the officers "Could I do anything?" He was told, "No, you can't do nothing."

Counsel for the petitioner argued to the trial court that it was unneces-

sary to inventory the contents of the vehicle as a prelude to impounding since Mr. Montez' father was available to take charge of the vehicle and remove it from the alley to a place of safety.

The People argued that, since the police could not establish that the car was registered to the petitioner, they had a duty to impound the vehicle. In denying the motion to suppress the trial court commented: "THE COURT: I would agree with you, counsel, except for the fact, as indicated by the District Attorney, that the ownership of this car had not yet been established. I don't think the officer could reasonably give it to some stranger, even though he might identify himself. And I am not satisfied that Mr. Montez' father sufficiently identified himself or demonstrated his ability to drive the car. The fact that the defendants knew Montez was capable of driving the car and they were satisfied of his identification does not demonstrate to this Court that this was knowledge that the officers had. Accordingly, the motion under Section 1538.5 will be denied."

*Issues Raised by the Petitioner Under These Facts:*

1. Did the police have lawful authority to inventory the contents of the vehicle prior to impounding it?

2. Was there reasonable cause to search the automobile as an incident to the arrest of the petitioner?

## DISCUSSION

California law authorizes a deputy sheriff or police officer to order the removal of a vehicle from the streets upon the arrest of the driver where the person arrested is required to be taken before a magistrate without unnecessary delay. Vehicle Code section 22651 provides in pertinent part: "Any . . . regularly employed . . . deputy of the sheriff's office . . . in which a vehicle is located or any regularly employed and salaried officer of a police department in a city in which a vehicle is located, . . . may remove a vehicle from a highway under the following circumstances: . . . (h) When an officer arrests any person driving or in control of a vehicle for an alleged offense and the officer is by this code or other law required or permitted to take and does take the person arrested before a magistrate without unnecessary delay." A person arrested for a violation of Vehicle Code section 23102 must be taken before a magistrate without unnecessary delay. (Veh. Code, § 40302.) In removing a vehicle from the place of the arrest pursuant to Vehicle Code section 22651, the officer "shall take the vehicle to the nearest garage or other place of safety or to a garage designated or maintained by the governmental agency of which the officer

or employee is a member, where the vehicle shall be placed in storage." (Veh. Code, § 22850.)

■ In the matter before us, the officers were authorized to remove the vehicle from the place of arrest because the petitioner was arrested for a violation of Vehicle Code section 23102. Relying heavily on *Virgil* v. *Superior Court,* 268 Cal.App.2d 127 [73 Cal.Rptr. 793] (hg. den. Feb. 5, 1969), the petitioner contends that it was unnecessary to impound the vehicle in the instant case since it could have been removed to a place of safety by the person who told the officers "he was related to the defendant." The People contend that *Virgil* v. *Superior Court, supra,* is factually distinguishable from the instant matter and ask us instead to decide this matter in conformity with the opinion in *People* v. *Superior Court,* 275 Cal.App.2d 631 [80 Cal.Rptr. 209], a decision from the same court which rendered the decision in *Virgil.*

In *Virgil* v. *Superior Court, supra,* 268 Cal.App.2d 127, the driver of the vehicle was arrested for reckless driving (Veh. Code, § 23103). After the driver and two passengers were removed from the vehicle, the arresting officer commenced an examination of the inside of the vehicle for the purpose of "inventorying the contents" incident to its removal from the highway pursuant to Vehicle Code section 22651. He found marijuana which petitioners contended was illegally seized. The court stated (pp. 132-133): "We hold that the Constitution does not permit an otherwise unreasonable search of a car simply because the police have statutory authority to arrest and take an accused before a magistrate plus the right to cause the car to be *removed from the highway.* . . .

"We will not challenge the bona fides of the decision of Officer Ewing to arrest petitioner Virgil for reckless driving and to take him before a magistrate. We do not even challenge the officers' right to cause the Chevrolet to be removed from the highway (assuming the car then to have been on a highway). We do challenge and we negate the necessity or the legality of taking the Virgil car into custody. Just as in *Preston, supra,* [*Preston* v. *United States,* 376 U.S. 364 (11 L.Ed.2d 777, 84 S.Ct. 881)] the arrest of the defendant (for vagrancy) had no connection with a necessity to take the accused's car into custody so there was no necessity here. Virgil had been arrested for a traffic violation; nothing more. Such an arrest alone could 'not have justified a search of the car for such search could have had no relation to the traffic violation.' [Citation.] (*People* v. *Moray* (1963) 222 Cal.App.2d 743, 746 [35 Cal.Rptr. 432]; see also *People* v. *Molarius* (1956) 146 Cal.App.2d 129, 130-131 [303 P.2d 350].) The traffic violation did not involve any forfeiture of the automobile nor was there anything else that had

happened which would reasonably justify a search. There was no furtive conduct. . . . The burden was upon the prosecution to justify the search. . . . It was therefore its burden to explain that an impounding of the car was necessary. Virgil was not alone. No reason appears why his friends could not have taken charge of the vehicle. The officers did not consult Virgil's wishes or the willingness of his companions to drive the car to a place of safekeeping (the only legitimate purpose under the facts known at the time for which custody could have been taken). In view of the protests of Virgil and the presence of the contraband in the car which the search revealed (which does not justify the search), the conclusion is inescapable that had Virgil been given the opportunity to make the decision—which was his to make—police custodial care of the car would not have been required. Absent such custody, no inventory taking was necessary or proper. The search violated petitioners' Fourth and Fourteenth Amendment rights."

In *People* v. *Superior Court, supra,* 275 Cal.App.2d 631, 632 [80 Cal.Rptr. 209], the same court upheld the taking of an inventory of the contents of the vehicle during which marijuana was found in the trunk of the car, stating: "In *Virgil,* there were sober occupants of the car who could have removed it from the scene, so there was no need to inventory and store the vehicle. In this case, however, since both occupants of the car were drunk, the police had either to tow it from the scene and store it, or leave it unattended on a city street. . . . The latter alternative was obviously undesirable, and the former requires inventory for protection of the owner and the storage bailee. An inventory of a vehicle is permissible when there is no reasonable alternative to towing and storage, and evidence which comes to light during the course of such an inventory is properly admitted into evidence. [Citations.]"

The present case is distinguishable from *Virgil* in several important respects.

1. In *Virgil* the defendant was not intoxicated. He was fully capable of knowingly and intelligently surrendering possession of the automobile to one of his passengers. In the instant matter the petitioner and his passenger appeared to be intoxicated. His ability to consent to a release of his car was clearly impaired.

2. In the instant matter the petitioner was not able to produce the registration of vehicle nor a driver's license to establish ownership of the car. In *Virgil* no question was raised as to the ownership of the automobile.

3. In *Virgil* one of the passengers was known to the police.[1] In the instant matter the police did not know the true relationship of the petitioner with the man who identified himself as a relative. The fact that the petitioner and Ruben Montez testified that the man who appeared after the arrest was Ruben Montez' father is not controlling. ■ The credibility of the witnesses, the weight of the evidence, and the resolution of conflicts are matters exclusively within the province of the trial court. (*People* v. *Shapiro,* 213 Cal.App.2d 618, 620 [28 Cal.Rptr. 907].) The testimony of the petitioner and his witness, Ruben Montez, was in conflict as to whether the petitioner gave his car keys to the person who appeared at the scene of the arrest.

■ The trial court's conclusion that the identity of the person who told the officers he was "a relative of the defendant" was not satisfactorily established is supported by the fact that the petitioner did not call Mr. Montez' father as a witness. Having failed to call Mr. Montez' father as a witness the trial court could reasonably conclude that his testimony would be adverse to the petitioner. (Evid. Code, § § 412 and 413.)

■ It is our view that it would have been an exercise of poor judgment for the officer to surrender the possession of the vehicle at 5 a.m., to a person who was a stranger to the officers (who apparently had no identification in his possession) because of the fact that the ownership of the vehicle had not been determined due to the absence of a registration certificate. Until the ownership was established the officer owed a duty to the true owner not to release it to a stranger. In view of the intoxicated condition of the driver and his lack of a driver's license which made it impractical and unwise to consult him as to the disposition of the car, the only reasonable course of action for the officer to follow was to impound the vehicle as prescribed by sections 22651 and 22850 of the Vehicle Code.

The inventory conducted by the police was reasonably necessary for the protection of the officer, the true owner of the vehicle, the petitioner, and the storage bailee. Any incriminating evidence discovered during the course of such an inventory is admissible. (*People* v. *Superior Court, supra,* 275 Cal.App.2d 631; *People* v. *Marchese,* 275 Cal.App.2d 1007, 1010-1011 [80 Cal.Rptr. 525].)

Assuming that the officer had determined that a sober and responsible person was available to take possession of the vehicle, an inventory of the

---

[1]"During the initial observation of the Virgil vehicle, Officer Ewing noted Leggett as a person known to him." (*Virgil* v. *Superior Court,* 268 Cal.App.2d 127, 129 [73 Cal.Rptr. 793].)

contents of the vehicle would have been necessary under these facts because of the driver's drunken condition and his inability to produce any indicia of ownership, in order to protect the officer, the true owner of the *contents* of the vehicle, and the person who accepted the responsibility of safeguarding the vehicle *and* its contents.

In *Virgil* the court stressed the fact that the inventory of the vehicle prior to impound was an "otherwise unreasonable search" since Virgil was arrested for reckless driving. A search of a car has no relation to a traffic violation. (*Virgil* v. *Superior Court, supra,* 268 Cal.App.2d 127, 132-133.)

In the present case (although not relied upon by the officer) there was reasonable cause to search the vehicle as an incident to a lawful arrest. While a stop for a minor traffic violation, without more, does not justify a search of a vehicle (*People* v. *Weitzer,* 269 Cal.App.2d 274, 290-291 [75 Cal.Rptr. 318]; *People* v. *Cruz,* 264 Cal.App.2d 437, 441 [70 Cal.Rptr. 249]; *People* v. *Moray,* 222 Cal.App.2d 743, 746 [35 Cal.Rptr. 432]; *People* v. *Van Sanden,* 267 Cal.App.2d 662, 664-665 [73 Cal.Rptr. 359]), it has been held that, as an incident to an arrest for drunk driving it is proper for the officers to search the vehicle for additional evidence related to this offense, particularly for liquor containers. In *People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834], the court states: "Since defendant and the driver of the car were intoxicated, their arrests were lawful. . . . As an incident to such arrest the police officers, for the purpose of discovering evidence of the crime, could properly search not only defendant and the driver but the car as well. Thus the officers could lawfully examine the interior of the car for possible presence of liquor containers." (See also, *People* v. *Gil,* 248 Cal.App.2d 189, 191-192 [56 Cal.Rptr. 88]; see also, *People* v. *Sirak,* 2 Cal.App.3d 608, 611 [82 Cal.Rptr. 716].)

Thus, the search in the instant case, if sought to be justified as incident to a lawful arrest, could be upheld regardless of the impound provisions of the Vehicle Code. It was not therefore an "otherwise unreasonable search" as was the situation in *Virgil. Preston* v. *United States* (1964) 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881] is also distinguishable. In that case there was no search at the scene of the arrest and the initial search occurred at the police impound after the defendants had been booked on a charge of vagrancy, a charge wholly unrelated to that to which the subsequently seized evidence related. It was held that the search was too remote in time and place to have been incidental to the arrest and thus the search without warrant failed to meet the test of reasonableness under the Fourth Amendment. (376 U.S. at p. 368 [11 L.Ed.2d at p. 781].)

Reviewing the entire record we were convinced that Officer Macquarrie acted in good faith in making an inventory of the contents of the petitioner's

vehicle preparatory to impounding the automobile. There is no evidence that the police, in relying on the impound provisions of the Vehicle Code, engaged in a subterfuge to cover up what would otherwise be an unreasonable search and seizure.

■ In determining the reasonableness of an officer's conduct when challenged as violating the Fourth Amendment we must look to the totality of the circumstances. ■ Applying this test to the facts before us we have concluded that the evidence recovered from the trunk of the petitioner's vehicle and sought to be suppressed was lawfully obtained. (See *People* v. *Marchese, supra,* 275 Cal.App.2d 1007; *People* v. *Webb,* 66 Cal.2d 107, 126 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; see also *People* v. *Williams,* 67 Cal.2d 226, 231 [60 Cal.Rptr. 472, 430 P.2d 30].)

The alternative writ of mandate is discharged. The petition for a peremptory writ is denied.

Kingsley, Acting P. J., and Dunn, J., concurred.